UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JANET FAWEMIMO,

                Plaintiff,                             14-cv-4510 (PKC)

    -against-                                  MEMORANDUM
                                                            AND ORDER

AMERICAN AIRLINES, INC.,

                Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Janet Fawemimo, who is proceeding pro se, brings negligence claims related to injuries that she allegedly suffered while taking her seat on an aircraft. On May 31, 2016, after the close of discovery, defendant American Airlines, Inc. ("American") filed a motion for summary judgment. (Docket # 38.) This Court granted three requests from Ms. Fawemimo to extend the deadline to file opposition papers. (Docket #43-48.) Although the deadline was eventually extended to September 5, 2016, Ms. Fawemimo never filed opposition papers. American noted as much in its September 16, 2016 letter to the Court, a copy of which was sent to Ms. Fawemimo. (Docket # 49.) Ms. Fawemimo has made no further communications with the Court, and the Court reviews American's motion unopposed.

        For the reasons explained, Ms. Fawemimo's negligence claims are preempted by federal aviation laws. American's motion for summary judgment is therefore granted.

RULE 56 STANDARD.

        Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit

Email and Mailed to Janet Fawemino 1/30/2017

under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant."  Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks omitted).  It is the initial burden of the movant to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief, and the evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law.  Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

When a motion for summary judgment is unopposed, as it is here, courts "must review the motion . . . and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law," because "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."  Id. at 246, 244 (internal quotation marks and citation omitted).  "Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion."  Id. (citation omitted).

Courts afford special solicitude to pro se litigants confronted with motions for summary judgment.  See Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).  American attached to its motion the Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment, as required by Local Civil Rule 56.2.  (Docket # 42.)  Although Ms. Fawemimo has

submitted no opposition papers, the Court draws every reasonable inference in her favor. 766 F.3d at 167.

DISCUSSION.

Ms. Fawemimo alleges that on or about March 5, 2010, she was a passenger on American Airlines Flight 19 from JFK Airport to Los Angeles International Airport ("LAX"). (Compl't ¶ 9.) She claims that while taking her seat, she "was seriously and painfully injured sustaining severe personal injuries . . . due to the reckless and dangerous TV monitor which protruded from the wall in front of and above of the plaintiff's seat (the middle seat) was painted to blend in with the wall [sic]." (Compl't ¶ 10.) According to Ms. Fawemimo, the seat "was negligently, carelessly, and dangerously too close to the wall. Consequently, plaintiff sustained a severe head injury, and bradycardia to her heart when she hit her head against the TV monitor while taking her seat." (Compl't ¶ 11.) She alleges that she was transported from LAX to a hospital, causing her to "miss[ ] her once in a lifetime event because, Ms. Fawemimo spent the next three days at different hospitals." (Compl't ¶ 13.) She alleges that she now suffers from "an irreversible medical problem that is attributed to this accident." (Compl't ¶ 18.)

The Complaint alleges that American negligently failed to provide safe seating, or to warn passengers about the potential safety issues regarding "protruding" TV monitors. (Compl't ¶ 17.) Ms. Fawemimo seeks approximately $11.5 million in compensatory damages and $21 million punitive damages. (Docket # 13.) She also seeks injunctive relief requiring an increase in the distance between aircraft seats and walls, and requiring that aircraft walls and monitors be painted different colors. (Compl't ¶ 22.)

Discovery in this case is closed. In its motion for summary judgment, American contends that Ms. Fawemimo's claims are preempted by the Federal Aviation Act, 49 U.S.C. §

1301, et seq., as amended by the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1) ("ADA").

"The Supremacy Clause, U.S. Const. art. VI, cl. 2, 'invalidates state laws that 'interfere with, or are contrary to,' federal law.'" Air Transp. Ass'n of Am., Inc. v. Cuomo, 520 F.3d 218, 220 (2d Cir. 2008) (quoting Hillsborough Cnty. v. Automated Med. Labs., Inc., 471 U.S. 707, 712 (1985)). "Express preemption arises when a federal statute expressly directs that state law be ousted," whereas implied preemption arises when "Congress intended the Federal Government to occupy a field exclusively, or when state law actually conflicts with federal law." Id. (quotation marks, alterations and citations omitted). Implied preemption applies when the federal interest in a field is "sufficiently dominant" that it precludes "supplementation by the States . . . ." Id. at 221. The Second Circuit has concluded that the FAA "does not preempt all state law tort actions," and that states may enact laws that do not conflict with federal statute or regulations. See id. at 224-25.

A "determination regarding preemption is a conclusion of law . . . ." Drake v. Lab. Corp. of Am. Holdings, 458 F.3d 48, 56 (2d Cir. 2006). The ADA's preemption provision states:

> Except as provided in this subsection, a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a . . . service of an air carrier that may provide air transportation under this subpart.

49 U.S.C.A. § 41713(b)(1). None of the exceptions applies to this case, meaning that Fawemimo's negligence claims are preempted if they relate to the "service of an air carrier . . . ." See generally Air Transp. Ass'n, 520 F.3d at 221.

The ADA does not define what constitutes the "service" of an air carrier. The Second Circuit had "little difficulty" concluding that service includes "food, water, electricity,

and restrooms" made available to passengers during ground delays.  Id. at 222.  Other courts of appeals similarly have defined service to include "matters such as boarding procedures, baggage handling, and food and drink – matters incidental to and distinct from the actual transportation of passengers."  Id. at 223 (collecting cases).  The Second Circuit has raised hypothetical subjects like state regulation of in-flight soda, allergen-free foods and warnings about deep-vein thrombosis as implicating an air carrier's service and therefore subject to preemption.  Id. at 225.  The Second Circuit observed that a broad interpretation of "service" was needed in order to prevent "a patchwork" of state laws affecting the operations of an air carrier.  Id. at 222-25.  "Onboard amenities, regardless of whether they are luxuries or necessities, still relate to airline service and fall within the express terms of the preemption provision . . . ."  Id. at 224.

District courts have concluded that the ADA preempts state-law tort claims related to a variety of airline-related conduct.  See, e.g., Khan v. Am. Airlines, Inc., 2008 WL 5110852 (S.D.N.Y. Nov. 26, 2008) (tort claims related to nut allergies are preempted) (Buchwald, J.); Farash v. Continental Airlines, Inc., 574 F. Supp. 2d 356, 366 (S.D.N.Y. May 23, 2008) (claims about employee rudeness and customer service are preempted) (Sullivan, J.); Galbut v. Am. Airlines, Inc., 27 F. Supp. 2d 146, 152 (E.D.N.Y. 1997) (claims over passenger upgrades are preempted).  On the other hand, local land-use laws concerning tree-removal permits in or around small, local airports are not preempted if they do not intrude on a federal interest or regulation.  Goodspeed Airport LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n, 634 F.3d 206, 211-12 (2d Cir. 2011).

District courts sometimes undertake a three-factor inquiry, first used by then-District Judge Sotomayor in Rombom v. United Air Lines, Inc., 867 F. Supp. 214, 222 (S.D.N.Y. 1994), to determine whether a common-law tort claim is preempted.  See, e.g., Doe v. Delta

Airlines, Inc., 129 F. Supp. 3d 23, 35 (S.D.N.Y. 2015) (Engelmayer, J.) (applying Rombom test). The test considers (1) "whether the activity at issue in the claim is an airline service"; (2) "if the activity in question implicates a service, the court must then determine whether the claim affects the airline service directly or tenuously, remotely, or peripherally"; and (3) "whether the underlying tortious conduct was reasonably necessary to the provision of the service." Id. at 221-22.

American has come forward with an affidavit submitted by an aircraft engineering manager, Cheryl Hurst, who supervised design changes to the interior of the company's aircrafts, including the plane boarded by Ms. Fawemimo. (Hurst Aff't ¶ 3.) Hurst states that 23-inch LCD video monitors were installed as part of the project, and that their size "was a consideration" because of viewing requirements for safety-demonstration videos. (Hurst Aff't ¶ 4-5.) The monitors were positioned 58.2 inches above the cabin floor, protruded 3.33 inches and were framed with "a coordinating color to the tapestry on the wall." (Hurst Aff't ¶ 5.)

Hurst states that the installation complied with federal regulation and industry practices, including 14 C.F.R. part 25, Federal Aviation Administration Advisory Circular 25-17 and unspecified FAA issue papers. (Hurst Aff't ¶ 5.) Hurst also states that the Southwest Region Aircraft Certification Office of the Federal Aviation Administration approved the certification plan. (Hurst Aff't ¶ 3.) Indeed, the Federal Aviation Administration has issued regulations on aircraft-injury prevention. See 14 C.F.R. § 25.785. It requires "[t]he elimination of any injurious object within striking radius of the head." Id. § 25.785(d)(1). It requires that a "projecting object that would injure persons seated or moving about the airplane in normal flight must be padded." Id. § 25.785(k). Informal agency guidance regarding cabin interiors, issued

in May 2009, includes non-exclusive precautions to be taken as to video monitors, including the elimination of sharp corners. (Morrisey Dec. Ex. E.)

This Court concludes as a matter of law that American's placement of video monitors fits comfortably within the category onboard amenities that "relate to airline service," as identified by Air Transportation Association, 520 F.3d at 224. The installation of monitors satisfies all three prongs of the Rombom test: first, the use and positioning of an in-flight monitor relates to an airline service; second, plaintiff's claims concerning the placement of the monitors directly affects that service; and third, the placement of monitors near passenger seating was essential to the provision of safety-instruction videos and in-flight entertainment. See 867 F. Supp. at 221-22. Like the provision of food, water, electricity and restrooms, the use of in-flight monitors are directly related to "service of an air carrier." 49 U.S.C.A. § 41713(b)(1); Air Transp. Ass'n, 520 F.3d at 222. Aircraft monitors, and cabin safety-design measures more broadly, are a subject of federal regulatory guidance and implicate federal interests. Ms. Fawemimo's claims, if successful, could upset the federal interest in aircraft-cabin safety in favor of a patchwork of requirements concerning the placement of monitors and aircraft layout.

Ms. Fawemimo's negligence claims are expressly preempted by the Federal Aviation Act, as amended by the Airline Deregulation Act, and therefore are dismissed. Because the Court concludes that her claims are preempted, the Court does not reach defendant's argument that no reasonable jury could find in plaintiff's favor as to her negligence claims.
CONCLUSION.

Defendant's motion for summary judgment is GRANTED. (Docket # 38.) The Clerk is directed to terminate the motion, enter judgment for the defendant and to close this case.

SO ORDERED.

                                                 P. Kevin Castel
                                             United States District Judge

Dated: New York, New York
         January 30, 2017